UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00748-RJC-DSC

| | |
|---|---|
| FELIPE PEREZ PEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| LEON RODRIGUEZ, Director, United States ) | |
| Citizenship and Immigration Services, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Felipe Perez Perez's ("Plaintiff's") Motion to Set Aside Final Agency Action, (Doc. No, 14); Leon Rodriguez's ("Defendant's") Motion for Summary Judgment on the Administrative Record, (Doc. No. 16); Plaintiff's Response in Opposition, (Doc. No. 17); and Defendant's Response in Support, (Doc. No. 18).

## I. BACKGROUND

A. Procedural Background

On October 28, 2016, Plaintiff filed his Complaint before this Court. (Doc. No. 1). Defendant filed his answer on January 26, 2017. (Doc. No. 10). Then, on April 4, 2017, Plaintiff filed a "Motion to Set Aside Final Agency Action." (Doc. No, 14). A month later, rather than file a response, Defendant filed a "Motion for Summary Judgment on the Administrative Record." (Doc. No. 16). Both motions are ripe for this Court's consideration.

B. Factual Background

Plaintiff is a 20 year-old national from Guatemala. (Doc. No. 1 ¶1, 6). In January, 2014, at the age of 16, Plaintiff sought refuge from his allegedly abusive parents in Guatemala by

attempting to cross the United States border alone. (Id. ¶7). When Plaintiff crossed the United States border, he was arrested byUnited States Customs and Border Protection agents. (Id. ¶8). Plaintiff was held in civil detention and later transferred to North Carolina after deeming him an "Unaccompanied Minor" under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008. (Id. ¶ 10–11).

In North Carolina, Plaintiff appeared before the General Court of Justice for Mecklenburg County, which awarded Plaintiff's older brother, Mateo Perez, temporary emergency custody of him on June 29, 2015. (Doc. No. 12: Administrative Record ("A.R.") at 110–13). This e*x parte* temporary custody order lasted only until a full hearing could be held on July 22, 2015. (Id. at 113).

In the state court's temporary custody order, findings of fact indicated that Plaintiff's parents "abandoned, neglected, and abused" him since he was eight years old. (Id. at 111). "Upon information of the minor," the court found that: (1) Plaintiff's parents stopped providing for him; (2) he was not allowed to go to school, (3) he had one change of clothes; (4) he would have to walk one hour to get to work; (5) he was afforded one meal a day; (6) and that his father was abusive both verbally and physically. (Id.). As a result, Plaintiff sought change and migrated to the United States in order to seek refuge by living with his older brother. (Id.). The court then concluded as a matter of law that:

> (1) it has jurisdiction over Felipe Perez Perez and that he is dependent upon this Court; (2) Reunification with the biological parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law; (3) it is not in Felipe Perez Perez's best interest to return to Guatemala; and (4) it is Felipe Perez Perez's best interest for temporary and permanent custody to be awarded to the Plaintiff.

(Id. at 112). Two week prior to the hearing date established by the juvenile court, Plaintiff turned

18, the North Carolina age of majority, and thereafter fell outside of that court's jurisdiction. (Doc. No. 14 at 2). The July hearing never occurred. Plaintiff's permanent custody status was left unresolved.

Prior to turning 18, and while under the temporary custody order, Plaintiff filed an application for special immigrant juvenile immigration ("SIJ") status. (Doc. No. 1 ¶14). This status required certain findings made by state juvenile courts. 8 U.S.C.A. § 1101(a)(27)(J); 8 C.F.R. § 204.11. On July 31, 2015, the United States Citizenship and Immigration Services ("USCIS") issued a notice of intent to deny Plaintiff's application. (A.R. 76). To support its decision, USCIS emphasized that the temporary custody order was not permanent:

> The Order Granting Ex Parte Temporary Custody is expressly temporary in nature and does not make a finding that reunification with one or both parents is permanently not viable. The order submitted specifically states that the terms of the order remain in effect until the next court date of July 22, 2015. The petitioner did not submit any subsequent court orders or any other evidence of additional custody determinations made by the juvenile court as evidence that the order is a permanent finding. Additionally, the court order does not make specific factual findings to support the statement that it is not in the best interest of the petitioner to be returned to Guatemala.

(A.R. 77). In response, Plaintiff sought and received a *nunc pro tunc* order from the state court that granted his temporary custody order. In this second order, the court entered three "findings of fact": (1) Plaintiff initiated the *ex parte* temporary emergency child custody action; (2) an order was granted and signed on June 29, 2014; and (3) "[b]ecause the child turned 18 years old four days after the signing of the Order, the Order granting temporary custody to Plaintiff was as permanent as possible under North Carolina Law." (A.R. 71). USCIS denied Plaintiff SIJ status stating that the *nunc pro tunc* order "does not overcome the fact that the custody order submitted is expressly temporary in nature and therefore does not make the finding that reunification with one or both parents is permanently

not viable." (A.R. 62).

After USCIS denied his application, Plaintiff appealed to the Administrative Appeals Office ("AAO"), which affirmed the findings and reasoning of USCIS. (A.R. 5–6). AAO concluded that, due to the lack of a permanent custody order, the proceedings and their findings lacked finality. (A.R. 5).

These facts are largely not in dispute; their legal effect is. This Court finds that the temporary nature of the lower court's custody order fails to fulfill the requirements needed in order to receive SIJ status, especially in light of the considerable deference courts afford agencies as they execute their statutory duties.

## II. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") provides for judicial review of final agency actions. See 5 U.S.C. §§ 702, 704. Under the APA,

> [t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or] (E) unsupported by substantial evidence in a case ... reviewed on the record of an agency hearing provided by statute.

Id. § 706(2)(A), (E). In this context, "a reviewing court must decide if the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." Virginia Agr. Growers Ass'n, Inc. v. Donovan, 774 F.2d 89, 93 (4th Cir. 1985). As a result, this Court does not have discretion to substitute its own judgment for the agency', absent arbitrary and capricious action such as:

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not

>be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Manufacturers Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Further, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." United Seniors Ass'n v. Social Sec. Admin., 423 F.3d 397, 404 (4th Cir.2005) (citations omitted); cf. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972) (explaining that a court should uphold the agency's decision even if the court disagrees with the it, as long as the decision is supported by substantial evidence).

## III.   DISCUSSION

Plaintiff asks the Court to review the decisions of USCIS and AAO in regard to their denial of special immigration juvenile status. Congress created SIJ status within the Immigration and Nationality Act of 1990 as a form of relief allowing non-citizen children to lawfully reside in the United States and, eventually, achieve citizenship. 8 U.S.C. § 1101(a)(27)(J); Budhathoki v. Dep't of Homeland Sec., 220 F. Supp. 3d 778, 781 (W.D. Tex. 2016). This status applies to an immigrant who is present in the United States:

> (i)   who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii)  for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter….

8 U.S.C.A. § 1101(a)(27)(J). As such, applicants must complete a two-step process:

First, the juvenile must apply to a state "juvenile court" for a predicate order finding that:

(1) The juvenile is under the age of 21 and is unmarried;

(2) Reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under state law;

(3) It is not in the best interest of the juvenile to be returned to his parents' previous country of nationality or last habitual residence;

(4) The juvenile is dependent on the state court or has been placed under the custody of an agency or an individual appointed by the court; and

(5) The state court has jurisdiction under state law to make judicial determinations about the custody and care of juveniles. See 8 U.S.C. § 1101(a)(27)(J)(i), (ii); 8 C.F.R. § 204.11(a), (c), (d).

Second, the juvenile must submit an application, which includes the state juvenile court order, to USCIS, demonstrating his statutory eligibility. The Secretary of Homeland Security, generally through USCIS's directors, must consent to grant SIJ status for each applicant.

Budhathoki, 220 F. Supp. 3d at 782 (citing 8 U.S.C. § 1101(a)(27)(J)(i), (ii); 8 C.F.R. § 204.11).

It is within the first step that Plaintiff's action fails - the temporary custody order made by the

state court does not qualify as the necessary juvenile court predicate order.

Plaintiff argues that Defendant's decision: (1) constitutes an *ultra vires* requirement of permanent custody orders; (2) is arbitrary and capricious in light of the temporary custody order's finality; and (3) violates the Full Faith and Credit Clause. (Doc. No. 14).

In Reyes v. McCament, No. 3:16-CV-00749, 2017 WL 3634068, this Court dealt with facts almost identical to this case. There, the Court denied the plaintiff's Motion to Set Aside Final Agency Action and granted the defendant's Motion for Judgment on the Record. Reyes, 2017 WL 3634068 at *1. The Court was right then, and the result in turn is commanded by the facts of this case.

A. The Agency Decisions Did Not Add An *Ultra Vires* Requirement for Permanent Custody Orders.

Plaintiff first argues that AAO and USCIS improperly created a requirement of permanent custody orders within the SIJ application process, constituting an *ultra vires* act that contradicts the text and structure of the relevant statutes and regulations at play. (Doc. Nos. 14 at 4; 17 at 2). The Court disagrees.

A fundamental principle of administrative law requires agencies to function within the confines of the power Congress affords them. Agency actions are unlawful when they are found to have been "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C.A. § 706 (2)(C). An *ultra vires* action occurs when an agency steps outside of those confines. This includes when an action pursues a mission Congress did not empower the agency to pursue or when an action constitutes a method forbidden by Congress that pursues an otherwise approved mission. Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec., 698 F.3d 171, 179 (4th Cir. 2012). The courts narrowly review *ultra vires* actions. They "may not dictate how government goes about its business but only whether a

public entity 'has acted within the bounds of its authority or overstepped them.'" Id. (quoting Catholic Health Initiatives v. Sebelius, 617 F.3d 490, 497 (D.C.Cir.2010)).

Here, Plaintiff and Defendant vigorously contest whether Congress intended to limit SIJ qualification to permanent custody orders alone. (Doc. No. 14 at 5). That contest, robust though it is, ultimately goes to the Defendant's interpretation.

To begin with, the Court must afford Defendant deference in the interpretation of the statutes and regulations it administers. Auer deference is afforded to agencies when they interpret their own regulations. Shipbuilders Council of Am. v. U.S. Coast Guard, 578 F.3d 234, 242 (4th Cir. 2009). In those instances, the agency's interpretation is "controlling unless plainly erroneous or inconsistent with the regulation." Id. (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)). Otherwise, an agency's interpretation of a statute triggers Chevron deference, where courts must respect agency regulations that contain "a reasonable interpretation of an ambiguous statute." Christensen v. Harris Cty., 529 U.S. 576, 586–87 (2000).

The Court finds that Defendant's interpretation of its relevant regulation, 8 C.F.R. §204.11, is controlling due to the lack of plain error or inconsistencies. Furthermore, if the Immigration and Nationality Act as amended by TVPRA of 2008 were to have any ambiguities, Defendant's regulation stands as a reasonable interpretation and should therefore receive controlling effect.

Defendant does not add some additional, unauthorized requirement of permanency to the SIJ application process. Rather, Defendant works within its statutory duty to find that the proper state-level determinations for SIJ status were not made as defined by North Carolina law. The controlling statute, 8 U.S.C. 1101(a)(27)(J), requires a proper final declaration from a state juvenile court. Similarly, 8 C.F.R. § 204.11 requires an eligible SIJ applicant to have "been declared dependent upon a juvenile court located in the United States *in accordance with state law*

*governing such declarations of dependency*, while the alien was in the United States and under the jurisdiction of the court." Defendant's interpretation aligns with Congress' intent and is well supported. Defendant's argument is persuasive that both Congress' governing statute and its own regulations reject temporary orders established through emergency *ex parte* hearings. Such orders do not support either the sufficient findings of fact or the permanency needed to support the requisite finding of nonviable reunification between Plaintiff and one or both of his parents.

   B. <u>The USCIS and AAO Decisions Are Not Arbitrary or Capricious Actions.</u>

While the Court gives Defendant considerable deference in its interpretation of the statutes it is charged with executing, and those regulations made in pursuit of their statutory mission, it does not blindly accept all agency actions as permissible. The Court has a duty to check agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706 (2)(A). An agency's action is considered arbitrary and capricious if:

> the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

<u>Hughes River Watershed Conservancy v. Johnson</u>, 165 F.3d 283, 287–88 (4th Cir. 1999) (quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut.</u>, 463 U.S. 29, 43 (1983)). When the Court finds such gaps within agency reasoning, it may not supplement its own views as those of the agency's. Rather, this is a very narrow and highly deferential inquiry. <u>Webster v. U.S. Dep't of Agric.</u>, 685 F.3d 411, 422 (4th Cir. 2012). "In the end, '[i]f the agency has followed the proper procedures, and if there is a rational basis for its decision, we will not disturb its judgment.'" <u>Id.</u> (quoting <u>Hodges v. Abraham</u>, 300 F.3d 432, 445 (4th Cir.2002)).

Plaintiff argues that, to the extent SIJ status requires permanent custody orders, the

USCIS's and AAO's decisions were arbitrary and capricious because Plaintiff's custody order was in fact final. (Doc. No. 14 at 8). Plaintiff cites North Carolina law for the proposition that temporary orders "must necessarily convert into a final order if a hearing is not set within a reasonable time." (Id. at 9) (quoting LaValley v. LaValley, 564 S.E.2d 913, 915 (N.C. Ct. App. 2002)). Assessments of what constitutes a "reasonable time" are addressed on a case-by-case basis. (Id.). Plaintiff states that the orders at issue here converted into final orders because the state court judge did not schedule Plaintiff's permanent custody hearing in a reasonable amount of time. Rather, Plaintiff asserts that a "reasonable amount of time" in this situation would have had to predate Plaintiff's eighteenth birthday. (Id.).

Review of North Carolina law, specifically N.C. GEN. STAT. §§50A-201, 204, 205, shows the inadequacy of basing SIJ status on temporary custody orders. Principally, temporary emergency orders are granted *ex parte*. Under North Carolina law, temporary custody orders are preliminary in nature. They are interlocutory and require further proceedings for a final decree. Cox v. Cox, 515 S.E.2d 61, 69 (N.C. Ct. App. 1999). They establish custody not as a permanent right, but as a right "pending the resolution of a claim for permanent custody—that is, pending the issuance of a permanent custody order." Kanellos v. Kanellos, 795 S.E.2d 225 (N.C. Ct. App. 2016).

Plaintiff's argument, without citation to any authority, that the Court should measure a "reasonable time" for the conversion of temporary custody order to permanent custody orders by Plaintiff's birthday is unavailing to defeat the deference afforded to the AAO and USCIS decisions.

C. The Full Faith and Credit Act, If Applicable, Does Not Contradict the AAO and USCIS Decisions.

Finally, Plaintiff argues that the AAO violated the Full Faith and Credit Clause when it refused to recognize a facially legitimate state custody order. (Doc. No. 14 at 10). Plaintiff admits

that the Full Faith and Credit Act generally applies to courts, not agencies. The Act mandates federal courts to give full effect to state court decisions. 28 U.S.C. § 1738. Plaintiff maintains, however, that agencies should also defer to this maxim. To support his decision, Plaintiff cites the case Ojo v. Lynch, 813 F.3d 533 (4th Cir. 2016). (Id.). That case involved the review of the Board of Immigration Appeal's ("BIA") decision denying a native Nigerian's motion to reopen removal proceedings. Ojo, 813 F.3d at 535. The Fourth Circuit analyzed the ambiguity of federal statutes in order to determine whether it should afford Chevron deference to the BIA's decision. Id. at 538. In the opinion, the Court stated that "the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations." Id. at 540 (quoting United States v. Windsor, 570 U.S. 744 (2013)). The Fourth Circuit cited the Full Faith and Credit Act to support this proposition. Id.

But the language of the Full Faith and Credit Act itself defeats this result. (Doc. No. 16-1 at 16). The Act mandates that state court decisions "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. AAO and USCIS simply gave the temporary custody order the same effect North Carolina itself would have given it.16. See Reyes, 2017 WL 3634068, at *11; Budhathoki, 220 F. Supp. 3d at 788, n.5.

**IV. CONCLUSION**

The AAO and USCIS did not "add" an *ultra vires* requirement for permanent custody orders within the application process for SIJ status. Nor did the AAO and USCIS act arbitrarily or capriciously in differentiating between temporary emergency custody orders and permanent custody orders. The agencies simply afforded Plaintiff's temporary custody order the same legal

effect that North Carolina itself would give it. As such, the temporary order does not suffice to establish the requisite findings for SIJ status. To hold otherwise would distort the state law Congress mandated USCIS to apply, and raise a flood of due process concerns given the temporary order's *ex parte* foundations. That this result works hardship on the Plaintiff is not sufficient warrant to intrude into the state-federal dynamic represented here.

**IT IS, THEREFORE, ORDERED** that:

1. Felipe Perez Perez's ("Plaintiff's") Motion to Set Aside Final Agency Action, (Doc. No. 14), is **DENIED**;

2. Leon Rodriguez's ("Defendant's") Motion for Summary Judgment on the Administrative Record, (Doc. No. 16), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

Signed: March 6, 2018

Robert J. Conrad, Jr.
United States District Judge